IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GREEN PARTY OF ARKANSAS, )
et.al., )
 )
    Plaintiffs, )
 )
v. ) Civil Action No. 4-06-CV-000758 GH
 )
CHARLIE DANIELS, in his official )
capacity as Secretary of State of the )
State of Arkansas, )
 )
    Defendant. )

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUN 27 2006
JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION

The plaintiffs claim in this lawsuit that Section 7-7-205(a) of the Arkansas Code violates the rights of the Green Party of Arkansas and two individual plaintiffs under the First and Fourteenth Amendments to the United States Constitution. They have asked this Court to issue a preliminary injunction prohibiting the defendants from failing to recognize the Green Party of Arkansas as a qualified political party, and for other relief as the Court deems equitable and just. The plaintiffs now respectfully submit this brief in support of their motion for a preliminary injunction.

### I. BACKGROUND

The Green Party of Arkansas is seeking recognition as an official political party in the State of Arkansas. On May 30, 2006, the Green Party of Arkansas submitted petitions containing approximately 18,000 signatures to the Secretary of State of Arkansas for authorization. Although this Court in

*Citizens to Establish a Reform Party v. Priest*, 970 F. Supp. 690, 699 (E.D. Ark. 1996), held that only 10,000 signatures should be required—the same number required to put an independent candidate on the ballot—the Secretary of State rejected the Green Party's request for official recognition. The Arkansas Attorney General has also refused to comply with the *Citizens to Establish a Reform Party* holding because he believes interim changes to the statutory structure of Arkansas election law has invalidated the previous findings of the Court. Op. Ark. Att'y Gen. No. 2005-130 (Aug. 10, 2005).

### A. The Statutory Scheme

The party recognition scheme in Arkansas sets forth the procedure by which an unrecognized political party can obtain official recognition under Arkansas law. Ark. Code Ann. § 7-7-205(a). The party must file a petition with the Secretary of State containing the signatures of qualified electors equal in number to at least three percent of the total number of votes cast for the office of Governor or presidential electors, whichever is less, at the last preceding election (24,171). *Id.*

The United States District Court for the Eastern District of Arkansas held in *Citizens to Establish a Reform Party*, 970 F. Supp. at 699, that the Equal Protection Clause of the Fourteenth Amendment requires that the number of signatures required of new parties seeking recognition be the same as the number required of independent candidates seeking ballot access under Section 7-7-103(c)(2) of the Arkansas Code (10,000). The Arkansas Attorney General has taken the position, however, that *Citizens to Establish a Reform*

*Party* is no longer controlling law in light of recent amendments to the relevant statute, despite the affirmation of the standard in *Green Party of Arkansas v. Priest*, 159 F. Supp. 2d. 1140, 1142 (E.D. Ark. 2001).  *See* Op. Ark. Att'y Gen. No. 2005-130 (Aug. 10, 2005) (*quoting* Op. Ark. Att'y Gen. No. 99-255 (Oct. 28, 1999)).

Official recognition gives a political party at least two significant advantages.  First, it gives the party access to the ballot.  Ark. Code Ann. §§ 7-7-101 & -102. Second, it gives the party nominee an accurate and informative party label once on the ballot. Arkansas law requires that ballots include a party designation for candidates affiliated with recognized political parties but requires that all other candidates, regardless of their actual political affiliation, be labeled as "Independent."  Ark. Code Ann. §§ 7-5-208(f)(5) & -511(f).  There is no way other than official recognition for a party candidate to be listed on the ballot with an accurate and informative party label.

### B. The Plaintiffs

The plaintiff Green Party of Arkansas is an unincorporated voluntary political association of Arkansas citizens who seek to associate and express their political views through the electoral process.  It is not recognized as a political party by the Secretary of State.  The Party has collected enough signatures (approximately 18,000) to gain recognition under the *Citizens to Establish a Reform Party* standard, however the Secretary of State has denied their petition for official party status because they have not submitted at least 24,171 signatures pursuant to Section 7-7-205(a) of the Arkansas Code.

Plaintiff Jim Lendall is a Green Party candidate for Governor, however his name will not be listed on the ballot as the Green Party candidate in the November 2006 gubernatorial election without official recognition by the Secretary of State.

Plaintiff Mark Swaney is a qualified elector residing in the State of Arkansas.  He is a member of the Green Party of Arkansas and wishes to vote for Green Party candidates in the November general election and in future elections.

## II. ARGUMENT

The Eighth Circuit Court of Appeals has identified four factors for a district court to consider when determining whether a preliminary injunction should issue: (1) the likelihood that the moving party will succeed on the merits; (2) the threat of irreparable harm to the movant in the absence of the requested injunction; (3) the balance between the harm to the moving party if the injunction is denied and any harm to other parties if the injunction is granted; and (4) the public interest.  *See United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1178-79 (8th Cir. 1998); *Dataphase Sys. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  When applying these '*Dataphase* factors,' "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Clorox,* 140 F.3d at 1179.  As explained below, the balance weighs heavily in the plaintiffs' favor on each of the four factors.

### A. Likelihood of Success

The concept of "liberty" assured by the Due Process Clause of the Fourteenth Amendment embraces those rights and freedoms which are "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937) (Cardozo, J.). Among these most fundamental rights and freedoms are those that flow from the First Amendment, including the freedom of speech, *Gitlow v. New York*, 268 U.S. 652, 666 (1925), the freedom "to engage in association for the advancement of beliefs and ideas," *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958) (Harlan, J.), and "the right of citizens to create and develop new political parties," *Norman v. Reed*, 502 U.S. 279, 288 (1992).

Ordinarily, state laws which impinge upon such fundamental liberties are automatically subject to strict judicial scrutiny. *See, e.g., Shapiro v. Thompson*, 394 U.S. 618 (1969). The Supreme Court has recognized, however, that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). For this reason, the Court has adopted a special balancing test for evaluating due process claims against state election laws, all of which inevitably affect the fundamental rights of political parties, candidates, and voters:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must

> identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). Under this test, the level of scrutiny varies on a sliding scale with the extent of the asserted injury. When, at the low end of that scale, the law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 788, 788-89 n.9). But when the law places "severe" burdens on the rights of political parties, candidates or voters, "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* at 434 (quoting *Norman v. Reed*, 502 U.S. at 289).[1]

### 1. The Character and Magnitude of the Burdens

The party recognition scheme in Arkansas burdens "two different, although overlapping kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights,

---

[1] In addition to their due process claim, the plaintiffs allege that Arkansas's party recognition scheme violates fundamental associational rights protected by the Equal Protection Clause of the Fourteenth Amendment. However, "in election cases, equal protection challenges essentially constitute a branch of the associational rights tree. When the Supreme Court finds a violation of Equal Protection, it is nevertheless First and Fourteenth Amendment associational rights which are inequitably burdened." *Republican Party of Arkansas v. Faulkner County*, 49 F.3d 1289, 1293 n.2 (8th Cir. 1995). Under the facts of this case, the Court's analysis of the plaintiffs' equal protection and due process claims are essentially the same.

of course, rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). The scheme also burdens the fundamental "right of citizens to create and develop new political parties," *Norman*, 502 U.S. at 288.

These burdens could not be more severe. The Arkansas party recognition system keeps new parties off the ballot and denies them an opportunity to win votes. This level of exclusion far exceeds burdens that the Supreme Court has found to warrant strict scrutiny in other cases. In *Williams v. Rhodes*, for example, the Court applied strict scrutiny to several provisions of Ohio's restrictive election code, which together made it "virtually impossible for any party to qualify on the ballot except the Republican and Democratic Parties." 323 U.S. at 24. The burdens here are at least as heavy as those found by this Court to warrant strict scrutiny in a similar challenge to the Arkansas party recognition scheme in *Citizens to Establish a Reform Party*, where the court applied strict scrutiny because the burdens "serve[d] to bar altogether the recognition of a new political party in Arkansas." 970 F. Supp. at 696-97.

### 2. State Interests and Narrow Tailoring

Because the Arkansas party recognition system imposes severe constitutional burdens, it must be narrowly drawn to advance a compelling state interest. Although it remains to be seen what interests, if any, the defendant will identify in support of the scheme, the State has no compelling interest in preventing new political parties from forming by instituting restrictive barriers to being on the ballot. The disparity in requirements for

- 7 -

recognition of new political parties versus independent candidates is arbitrary and unjustified to the point of being unconstitutional.

The Supreme Court held in *Storer v. Brown*, 415 U.S. 724, 736 (1974), that a state has a "compelling" interest in "the stability of its political system." But the Court held more recently that this interest does not extend so far as to permit a state to protect existing parties from competition with independent or third-party candidates. *Anderson*, 460 U.S. at 801-02. Indeed, "[c]ompetition in ideas and governmental policies is at the core of our electoral process and of the First Amendment freedoms." *Id.* at 802 (quoting *Williams*, 393 U.S. at 32). There is thus a critical difference between a legitimate stability interest in avoiding "splintered parties and unrestrained factionalism," *Storer*, 415 U.S. at 736, and an illegitimate stability interest "in protecting the two major political parties," *Anderson*, 460 U.S. at 802. The Arkansas party recognition scheme serves the latter and not the former.

The State also cannot justify the system as necessary to advance its "important" (though not 'compelling') interest in requiring candidates to demonstrate "a significant modicum of support" before allowing their names to appear on the ballot. *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). The standard for recognition of emerging parties "makes it unreasonably difficult for proponents to advance new political parties while allowing independent candidates to be placed on the ballot with even less public support." *Citizens to Establish a Reform Party*, 970 F. Supp. at 699. In particular, the court in *Citizens to Establish a Reform Party*, cited the "common fundamental right" for

recognizing both independent candidates and new political parties, stating that if "10,000 signatures are sufficient to demonstrate a modicum of support for an independent candidate, then 10,000 signatures are also sufficient . . . for a new political party." *Id.*

### B. Threat of Irreparable Harm to the Plaintiffs

Harm is irreparable for purposes of a preliminary injunction when a court would be unable to compensate the plaintiffs adequately if they should ultimately prevail when the case is fully resolved on its merits. *See generally*, 13 James Wm. Moore et al., *Moore's Federal Practice* § 65.22[1][b] (3d ed. 1999). Free-speech restrictions and harms that touch upon the constitutional and statutory rights of political parties, candidates and voters are generally not compensable by money damages and are therefore considered irreparable. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Part of the reason for this treatment of political and voting harms is the special importance of the right to vote in the American democratic tradition:

> Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.

*Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964); *accord Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of

having a voice in the election of those who make the laws under which, as good citizens, we must live."). Money cannot fully compensate an individual for the loss of a right so fundamental. Part of the reason is also practical: a court simply cannot undo—by means of a special election or otherwise—all of the effects of an invalid election. Tremendous practical advantages accrue to those who win even invalid elections, and a court simply has no way to re-level the playing field.

In this case, the irreparable nature of the threatened injuries to the plaintiffs is obvious. *Citizens to Establish a Reform Party*, 970 F. Supp. at 696 (finding irreparable harm where a party was refused recognition unconstitutionally by the Secretary of State). Without an injunction, the State of Arkansas will not officially recognize the Green Party of Arkansas, which will prevent voters from having a clearly identified Green Party candidate on the Arkansas ballot come November.

Although the plaintiffs seek nominal damages for their injuries, no amount of money would make them whole without injunctive relief. Injunctive relief after the election would be highly impractical and virtually meaningless. Under these circumstances, the plaintiffs will suffer actual, imminent, and irreparable harm in the absence of preliminary relief.

### C. Balancing the Harms

The third *Dataphase* factor requires the Court to consider the potential impact that the requested injunction might have upon the defendant and to

balance that potential with the harms that the plaintiffs could suffer should the request be denied.

While the absence of an injunction would allow the plaintiffs to be unconstitutionally shut out of the political process, the defendant is unlikely to suffer any harm if the injunction is granted. The requested injunction would simply require the defendant to add the Green Party candidate to the ballot in the November election. Since these ballots have not yet been printed, the defendant will not likely incur any extra printing or significant administrative costs if the injunction is granted.

### D. The Public Interest

The public interest in this case is clear. The requested injunction will ensure that voters in Arkansas have the opportunity to vote for a clearly identified Green Party candidate in future elections. Without it, voter choices will be limited. The public undoubtedly has a vital interest in a broad selection of candidates as well as the conduct of free, fair and constitutional elections. The requested injunction, if granted, would therefore favor the public interest.

### III. CONCLUSION

The Court should grant the plaintiffs' motion for a preliminary injunction.

Respectfully Submitted,

BRYAN SELLS
Georgia State Bar No. 635562
American Civil Liberties Union
    Foundation, Inc.
2600 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA  30303
(404) 523-2721
(404) 653-0331 (fax)

_____
HOLLY DICKSON
Arkansas State Bar No. 98137
American Civil Liberties Union
    of Arkansas, Inc.
904 West Second Street, Suite 1
Little Rock, AR 72201
(501) 374-2842

ATTORNEYS FOR THE PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that I have served the attached pleading by U.S. Mail, first class postage prepaid, on the following attorney of record:

Mike Beebe
Attorney General
323 Center Street, Suite 200
Little Rock, AR  72201

Tim Humphries, General Counsel
Arkansas Secretary of State
Room 256 State Capitol
Little Rock, AR  72201

This 27 day of June, 2006.

*Holly Dickson*