**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**GREEN PARTY OF ARKANSAS; JIM**                            **PLAINTIFFS**
**LENDALL, AND MARK SWANEY**

**v.**                            **No. 4-06-CV-000758 GH**

**CHARLIE DANIELS, IN HIS OFFICIAL**                 **DEFENDANT**
**CAPACITY AS SECRETARY OF**
**STATE OF THE STATE OF**
**ARKANSAS**

## RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

Defendant offers this response to Plaintiffs' motion for a preliminary injunction. Because Plaintiffs' request for injunctive relief includes within its scope the entirety of Plaintiffs' claim for relief in this case, this response also serves as Defendant's request that the case be dismissed for failure to state a claim upon which relief may be granted. Fed. R.Civ P. 12(b)(6). For the reasons set forth below, the request for a preliminary injunction should be denied and the complaint should be dismissed.

## INTRODUCTION

Plaintiffs challenge a discreet portion of Arkansas' legislative scheme for recognizing new political parties and placing their candidates on the State's general-election ballot. According to Plaintiffs, Arkansas' requirement that new parties submit a different number of signatures than independent voters violates their equal-protection rights. Plaintiffs are wrong. Independent candidates and new parties are

1

not similarly situated therefore different requirements for ballot access for each is justified.  This conclusion is supported by the law, the facts, and by common sense.

### ARKANSAS' BALLOT-ACCESS SCHEME

Candidates who wish to appear on the general-election ballot in Arkansas in most elections[1] may do so either as the nominee of a recognized party, or as an independent candidate.  The recognized parties nominate their candidates in a primary election.  Independent candidates access the ballot by submitting petitions. The name of the party is printed adjacent to the candidate's name on the ballot.  The word "Independent" is printed beside the name of a candidate who qualifies by petition.  Write-in candidacies are permitted in all but municipal elections.  Write-ins for seats contested in the general election must file a notice of candidacy with the county clerk or Secretary of State, as the case may be, 90 days before the general election.  Ark. Code Ann. § 7-5-205.

Candidates for a party's nomination must pay a filing fee to the party, if any is required, and sign a party oath, if any is required, during a two-week filing period before the preferential primary.  See, Ark. Code Ann. § 7-7-203(c)(1).  The filing period in 2006 was March 21 through April 4.  The preferential primary was held May 23 and the runoff was held on June 13.  Candidates for local office (municipal, township and county offices) pay filing fees and file their pledges, if any, with the county committee of the party.  Candidates for district and statewide offices deal with the state party committee.  After paying filing fees and filing pledges if required by

---

[1] Judicial candidates run in non-partisan elections, and access the ballot either by paying a filing fee or submitting petitions.  Candidates for school board run in the school election in September and are non-partisan, too, and access the ballot by a petition with 20 signatures.

the party, the candidate receives a "party certificate" from the party.   Local candidates then file the party certificate and a political practices pledge, Ark. Code Ann. § 7-6-102, with the county clerk, and candidates for district or statewide offices file their party certificates and political practices pledges with the Secretary of State during the filing period.

Independent candidates for district, county or township offices must file a notice of candidacy during the filing period for party candidates.  By May 1 of the election year independent candidates must file petitions bearing the signatures of three percent of the "qualified electors" of the district, county or township or 2,000, signatures, whichever is less.   Statewide offices require petitions bearing the signatures of three percent of qualified electors in the State or 10,000 signatures, whichever is less.[2]  "Qualified electors" is defined as the total vote for all candidates for governor in the preceding election.  The deadline for filing petitions is May 1 of the election year.  Ark. Code Ann. § 7-7-103(b).  Petitions must be circulated no more than 60 days before the deadline.  Nothing requires the signatures to be witnessed.  Candidates for local offices file their petitions with the county clerk, and for district and statewide offices with the Secretary of State.  Political practices pledges must be filed with the petition.  Ark. Code Ann. § 7-6-102(a)(2).

A new party may gain recognition by filing petitions with the Secretary of State containing the names of three percent of the qualified electors in the state.  "Qualified electors" in this context is defined as the total number of voters for

---

[2] 10,000 signatures were needed to gain access to the ballot in 2006.  Generally, independent candidates for municipal office must gather from 10-50 signatures, depending on the classification of the city and the form of government.

governor or president in the last preceding election, whichever is less.  In 2006, that number is 24,171.  The signatures must be gathered in a 150-day period.  The Secretary of State cannot accept a petition that does not contain at least the required number of signatures.  The petition must declare the intent of organizing a political party, the name of the party, and that the party intends to participate in the next general election.   Signatures on the petition must be witnessed, and the canvasser must verify that he or she personally witnessed each signature on a page. The Secretary of State has 30 days to determine the sufficiency of the signatures submitted.  If the signatures are insufficient, petitioners have a "cure period" of 15 additional days to collect additional signatures.

A party that qualifies for recognition pursuant to this process may nominate its candidates in the preferential primary or by a nominating convention.  If the former route is chosen, the petitioning process (gathering, submission, counting by the Secretary of State, gathering new signatures during the cure period, and having cure-period signatures counted) must be finalized in time so that a new party can have candidates file during the filing period.  If the party chooses to nominate by convention, it must submit its petition in time for it to select candidates and have them file their political practices pledges no later than 60 days before the general election.  In 2006, the general election is on November 7, and the 60-day deadline falls on September 8.

Certification gives a political party access to the ballot.  Ark. Code Ann. §§ 7-7-101 & 102.  It also gives the party's nominees a party label once on the ballot. Once certified under Arkansas state law, a new political party may run a slate of

candidates for the first election after certification.  Ark. Code Ann. § 7-7-205(g)(2).  If the new political party obtains three percent of the total vote cast for the office of Governor or presidential electors at the first election after certification, the new political party can continue to nominate candidates.  Ark. Code Ann. § 7-7-205(g)(4). An independent candidate, on the other hand, is allowed a place on the ballot for a single race once the candidate meets the signature requirements for certification. Ark. Code Ann. § 7-7-103(b)(1)(B).

## ARGUMENT

Plaintiffs are the Green Party of Arkansas, the Green Party's supposed candidate for governor and a voter.  On May 26, 2006, the party delivered petitions containing approximately 18,000 signatures to the Arkansas Secretary of State's Office. The Secretary of State immediately rejected the petition pursuant to section 7-7-205(a)(3) of the Arkansas Code for failure to submit a "*prima facie*" sufficient number of signatures.  This litigation followed.

Plaintiffs assert that the differing signature requirements for statewide independent candidates and new parties violate their right to equal protection under the Fourteenth Amendment to the United States Constitution.  They assert that the petition requirement for new parties should be the same as that for independent candidates, and that this Court so held in *Citizens to Establish a Reform Party in Arkansas v. Priest*,  970 F.Supp. 690 (E.D. Ark. 1996).

As important to this case as what Plaintiffs allege is what they do not allege. Nothing in the complaint challenges the constitutional validity of Arkansas' overall ballot-access scheme.  Plaintiffs' make this choice in the face of the United States

Supreme Court's admonition that an entire ballot-access scheme, rather than a discreet portion of that scheme, should be examined.  *Storer v. Brown*, 415 U.S. 724, 737 (1974).

This failure is fatal to Plaintiffs' argument that this Court's previous ruling in *Citizens to Establish a Reform Party in Arkansas v. Priest*,  970 F.Supp. 690 (E.D. Ark. 1996), decided the issue in this case.  There, this Court examined the entire "scheme" for ballot access and found deficiencies with the scheme when the elements were considered in their entirety.  As noted, that approach is completely consistent with Supreme Court precedent.  That scheme has changed dramatically since, and likely as a result of, the *Reform Party* opinion.  See Ark. Op. Atty. Gen. 2005-130.  It is analytically and constitutionally inappropriate to challenge a portion of the scheme in isolation.  It is also analytically and constitutionally inappropriate to attempt to segregate a portion of the *Reform Party* opinion from the context of the case and claim that it decided this single issue.

This point becomes more apparent when one examines Plaintiffs additional failure to allege that the three-percent requirement standing alone is constitutionally suspect.  This choice is correct given that "it is rare, indeed, that a rule which requires a party to demonstrate a particular percentage of support in order to secure or obtain ballot access would be unconstitutional *per se* [thus] a reviewing court must determine whether 'the totality of the [state's] restrictive laws taken as a whole imposes a[n unconstitutional] burden on voting and associational rights.'"  *McLaughlin v. North Carolina Board of Elections*, 65 F.3d 1215, 1223 (4th Cir. 1995) (quoting *Williams v. Rhodes*, 393 U.S. 23, 34 (1968)).  Moreover, a state law

requirement that a candidate make a preliminary showing of support is legitimate. *Anderson v. Celebrezze*, 460 U.S. 780, 788 n. 9 (1983) ("The state has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates"); see also *Jenness v. Fortson*, 403 U.S. 431 (1971).

This case, therefore, raises only one point: whether a greater number of signatures may be required for party recognition than for an independent candidate to gain access to the ballot.  Stated otherwise, may a state constitutionally place more stringent requirements on parties than it does no individual, independent candidates.  The answer is that it clearly can.

The precedents universally support this conclusion.  For example, in *Arutunoff v. Oklahoma State Election Board*, 687 F.2d 1375 (10th Cir. 1982),the Libertarian Party of Oklahoma argued, as Plaintiffs' argue here, that "minor political parties are dealt with differently than independent candidates and that such discrimination violates their fourteenth amendment rights."   *Ibid*.  Specifically, the Libertarians complained that minor political parties were required to present signatures equal to five percent of the votes cast for President or Governor but that independent candidates could either file a petition signed by five percent of all registered voters or simply pay a filing fee.

The Tenth Circuit Court of Appeals rejected the Libertarian's argument with definitive language:

> We are not persuaded by this argument. A political group becoming a
> recognized political party and offering to the electorate a slate of

candidates is far different than one individual becoming an independent candidate to run for a particular office. As stated in Storer v. Brown, 415 U.S. 724, 745, 39 L. Ed. 2d 714, 94 S. Ct. 1274 (1974), "the political party and the independent candidate approaches to political activity are entirely different." It is our view, therefore, that the states need not treat minor political parties and independent candidates identically in order for state laws to withstand constitutional challenge.

*Ibid.*

Stated otherwise, political parties and independent candidates are not similarly situated, thus differing treatment is not constitutionally suspect. This precise reasoning led the District Court for the Western District of Texas to conclude that a Texas scheme imposing different requirements on independent candidates and new parties was appropriate in *Nader* v. *Connor*, 332 F. Supp.2d 982 (W.D. Tex. 2004). Adopting the Tenth Circuit's language, Judge Yeakel wrote:

> "[T]he political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other." *Storer*, 415 U.S. at 745. An independent candidacy allows an individual to campaign alone without the necessity of establishing a new political party. A person seeking to establish a new party, on the other hand, abdicates independence and individuality to create a distinct political organization. The political-party candidate runs with a slate of responsibilities that extend beyond those contemplated by an independent. Thus, a state need not treat minor political-party candidates and independent candidates identically in order for state laws to withstand constitutional challenge. See *Arutunoff*, 687 F.2d at 1380.

*Id.* at 990. Thus, Plaintiffs' theory that treating new political parties differently than independent candidates finds no footing in the law because the classes are not similarly situated.

The stipulated facts in this case support the conclusion that new parties are situated differently than independent candidates. Party recognition "gives the party's

nominees an accurate and informative party label once on the ballot."  Stipulation ¶ 2.  Independent candidates receive no such label and in fact eschew party labels. "Once certified under Arkansas state law, a new political party may run a slate of candidates for the first election after certification," and may remain on the ballot in subsequent elections if certain requirements are met, whereas "[a]n independent candidate is allowed a place on the ballot for a single race once the candidate meets the signature requirements for certification."  Stipulation ¶ 3.  Indeed, "[o]ther persons are interested in running as Green Party candidates, and their decision as to whether to seek the nomination of the Green Party may depend on whether the Secretary of State will be required to recognize Green Party candidates."  Stipulation ¶ 7.  Conversely, if any independent candidate gains access to the ballot, she will not bring with her additional candidates.

These facts are dramatic examples of just how different new parties are from independent candidates.  As the District Court for the Northern District of Illinois wrote in upholding ballot-access disparities between these two classes, party candidates create an entire platform, run with a state of candidates, and have "responsibilities which extend beyond those contemplated by an independent." *Stevenson v. State Board of Elections*, 638 F.Supp. 547, 554 (N.D. Ill. 1986).  These "responsibilities" justify different requirements for ballot access.

Finally, given the legal reality that states have "the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates," common sense counsels in favor of

allowing different requirements for party certification and independent-candidate ballot access.  A new party that gains ballot access by petition could clutter the ballot with hundreds of frivolous candidates who only serve to lengthen and muddle already long ballots.  The State of Arkansas has set the bar low, requiring merely three percent of the votes in the Governor's race.   Any party with committed supporters should be able to achieve this *de minimis* showing of support in 150 days.   Plaintiffs could not meet that low standard, and should not, as a consequence, be allowed to appear on the Arkansas ballot.

## CONCLUSION

The simple reality is that political parties are different from independent candidates. Parties are affiliations of like-minded individuals who wish to run for a panoply of offices in a multitude of elections.  Independent candidates are just that: independent individuals seeking a single office in a single election.  The State's concerns with the two classes are different, and those concerns justify different treatment.  Thus, the request for injunctive relief should be denied, and the case should be dismissed.

Respectfully submitted,


/s/ Brian G. Brooks
Bar No. 94209
Brian G. Brooks, Attorney at Law, PLLC
Attorney for Defendant
P.O. Box 605
Greenbrier, AR 72058
(501) 733-3457
bgblawfirm@sbcglobal.net

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk

of the Court using the CM/ECF system on this 4th day of August, 2006, which shall

send notification of such filing to the following:


Bryan Sells
American Civil Liberties Union
  Foundation, Inc.
2600 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA  30303

Holly Dickson
American Civil Liberties Union
  of Arkansas, Inc.
904 West Second Street, Ste. 1
Little Rock, Arkansas  72201


/s/ Brian G. Brooks
Bar No. 94209
Brian G. Brooks, Attorney at Law, PLLC
Attorney for Defendant
P.O. Box 605
Greenbrier, AR 72058
(501) 733-3457
bgblawfirm@sbcglobal.net