IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| GREEN PARTY OF ARKANSAS, et al., ) ) ) Plaintiffs, ) ) v. ) ) CHARLIE DANIELS, in his official ) capacity as Secretary of State of the ) State of Arkansas, ) ) Defendant. ) | Civil Action No. 4-06-CV-000758GH |

**THE PLAINTIFFS' REPLY TO THE DEFENDANT'S RESPONSE TO THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

The plaintiffs respectfully submit this reply to the defendant's Response to Motion for Preliminary Injunction, filed August 4, 2006 (Dkt. no. 14) ("Defendant's Brief"). As explained more fully below, the defendant's response largely misses the point. The defendant has misunderstood or misconstrued the legal basis for the plaintiffs' claims and has therefore failed to mention the appropriate legal standard. As a result, most of the key issues before the Court are entirely undisputed, and the defendant's argument on the only disputed issue has no merit.

**I.   The *defendant has failed to justify the heavy burden on the plaintiffs' fundamental rights.***

This case has boiled down to a single issue. The defendant does not dispute three of the four "*Dataphase* factors" that a court must consider when determining whether a preliminary injunction should issue. *See Dataphase*

*Sys. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). Secretary Daniels has offered no response to the plaintiffs' contention that they will suffer irreparable harm in the absence of an injunction. He does not dispute that the harm to the plaintiffs if the injunction is denied would outweigh any harm to him if the injunction is granted. And he does not dispute that the public interest weighs heavily in the plaintiffs' favor. The only question on which the defendant offers any argument at all is whether the plaintiffs are likely to succeed on the merits.

Even on that question, Secretary Daniels has offered little argument. He does not dispute that Section 7-7-205(a) of the Arkansas Code imposes heavy burdens on the plaintiffs' fundamental rights and must therefore be "narrowly drawn to advance a state interest of compelling importance." *Burdick v. Takushi,* 504 U.S. 428, 434 (1992) (internal quotation marks omitted). He has identified only one state interest to justify those heavy burdens – the state's interest in avoiding a crowded ballot. *See* Defendant's Brief, *supra,* at 9-10. As a result, the only question now before the Court is whether the State's interest in avoiding ballot clutter justifies its burdensome party recognition scheme.

This Court has already concluded that it does not. In *Citizens to Establish a Reform Party v. Priest,* 970 F. Supp. 690, 699 (E.D. Ark. 1996), the Court considered the issue at length and rightly concluded that the State's signature requirement for new parties is not narrowly drawn to advance the State's compelling interests:

> [T]he Supreme Court has recognized that states have an interest in limiting the size of the ballot, avoiding voter confusion, and protecting the integrity of the elections process. *Lubin v. Panish,* 415 U.S. 709, 714, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702 (1974). These state interests are protected by requiring a certain number of signatures on a petition to demonstrate a modicum of public support. *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). However, if 10,000 signatures are sufficient to demonstrate a modicum of support for an independent candidate (Ark. Code Ann. § 7-7-103(c)(2)), then 10,000 signatures are also sufficient to demonstrate a modicum of support for a new political party, especially where the legislature has also established that a sufficient demonstration of a modicum of support is established in both instances by a 3% signature requirement.

*Id.; see also, e.g., Delaney v. Bartlett,* 370 F. Supp. 2d 373 (M.D.N.C. 2004) (holding that North Carolina's signature requirement for independent candidates was not narrowly drawn to serve the state's interests in avoiding ballot clutter and voter confusion). The defendant claims in his brief that Arkansas' party recognition scheme has "changed dramatically," since the *Reform Party* ruling, but he offers no response to the Court's analysis of this pivotal issue. Defendant's Brief, *supra,* at 6. Nor does he suggest that the signature requirement has changed in the ten years since the *Reform Party* case. Not only does the Court's *Reform Party* reasoning control the outcome of this case, but the defendant in this case – whose predecessor in office was the defendant ten years ago – remains bound by the original *Reform Party* ruling.

The Secretary's argument, moreover, does not square with the facts. Since Arkansas adopted the 10,000-signature petition requirement for independent candidates in 1977, only two state-wide candidates have successfully obtained ballot access by submitting the requisite number of

signatures: John Black for U.S. Senator in 1978 and Rod Bryan for Governor in 2006. *See* Joint Stipulations of Fact, filed July 30, 2006 (doc. no. 12), at 2. Furthermore, between 1980 and 2004, Arkansas had an average of only 2.06 candidates on the general election ballot for Governor and Senator, ranking dead last among the 50 states. *See Governor, Senator Access Comparison*, 21 Ballot Access News, no. 2, June 5, 2005, *available at* http://www.ballot-access.org/2005/0605.html#7 (last visited July 17, 2006). (The average state had an average of 3.73 candidates on the ballot over the same period. *See id.*) In other words, Arkansas' ballots have been among the least crowded in the entire United States over the last 26 years. This history is a clear indication that the 10,000-signature threshold has been more than adequate to prevent a crowded ballot in Arkansas and that the 3% signature requirement for new parties is much more than necessary to do the same. *See, e.g., Mandel v. Bradley,* 432 U.S. 177, 178 (1977) (criticizing the district court for failing to analyze what the "past experience" under the ballot restriction might indicate about the burdens it imposed); *Storer v. Brown,* 415 U.S. 724, 742 (1974) ("Past experience will be a helpful, if not always unerring, guide" when assessing the burdens imposed by ballot access requirements).

      The defendant warns that a new party "could clutter the ballot with hundreds of frivolous candidates who only serve to lengthen and muddle already long ballots." Defendant's Brief, *supra,* at 10. Putting aside for the moment the fact that Arkansas' ballot is already among the least crowded ballots in the nation, a single new party simply cannot create a crowded ballot.

The state of Arkansas uses an "office-group" ballot, which lists the name of all candidates for a particular office in a perpendicular column under the name of the office to be filled, and a party can nominate only one candidate for each office. Ark. Code Ann. § 7-5-208(g)(1). As a result, the recognition of a new party can add at most one candidate to the ballot for each office. Where the voter could have had only two parties' candidates from which to choose, he or she could have three. This is not a recipe for voter confusion but is rather a sign of a healthy democracy.

As a practical matter, moreover, it is unlikely that a 10,000-signature threshold for new political parties will have a dramatic effect on the length of the State's ballots. "[T]he experience of many States . . . demonstrates that no more than a handful of parties attempts to qualify for ballot positions" even when the threshold is low. *Williams v. Rhodes*, 393 U.S. 23, 33 (1968) There is no evidence in this case that any parties other than the Green Party would seek and obtain recognition under a lower threshold, nor is there any reason to speculate that more than a handful would ever do so at one time. While theoretically possible, "[n]o such remote danger can justify the immediate and crippling impact on the basic constitutional rights involved in this case." *Id.* Arkansas has a long way to go before its ballots become so lengthy as to present a real problem for voters. *See,e.g., Lubin v. Panish,* 415 U.S. 709, 716 (1974) (suggesting that a ballot with 12 or more candidates for single office may be confusing); *Williams v. Rhodes,* 393 U.S. at 47 (Harlan, J., concurring) ("the presence of eight candidacies cannot be said, in light of experience, to carry a

significant danger of voter confusion"). There is certainly no evidence in this case that a ballot which included the Green Party's candidates in addition to those of the Democratic and Republican parties would be confusing to Arkansas' voters.

While the 3% signature requirement may serve the Democratic and Republican parties' interest in shielding themselves from competition in the marketplace of ideas, it is far more burdensome than necessary to serve any legitimate interest of the State of Arkansas. For that reason, and under these circumstances, the defendant has failed to justify the 3% signature requirement's heavy burden on the plaintiffs' fundamental rights.

### II. The defendant has applied the wrong legal standard.

Most of the defendant's brief attacks an Equal Protection argument that the plaintiffs have not actually made. The Secretary contends that the State may require more signatures of a new political party than it does of an independent candidate because political parties and independent candidates are not similarly situated under the law. *See* Defendant's Brief, *supra*, at 7-9. A new party receives a greater benefit from ballot access, he argues, and the State may therefore charge a higher price for it. *See id.* Although the Secretary does not set forth the legal standard that he believes is appropriate, it is apparent that he has applied a rational-basis review that might apply to any other Equal Protection claim not involving suspect classifications. *See, e.g., Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985).

The plaintiffs in this case do not contend that the number of signatures required of new political parties must always be the same as the number required of independent candidates.  They claim instead that the State simply may not burden their fundamental political rights without sufficient justification. This kind of claim is not governed by rational-basis review but is subject to a higher level of scrutiny according to the balancing test set out in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). The defendant, however, does not even mention the *Anderson* test, and the cases on which the defendant relies do not address the only issue that is actually before the Court.

The question here is not whether different signature requirements for political parties and independent candidates are rational. The question is not even whether different requirements are constitutionally permissible.  The question is whether Arkansas' 3% signature requirement is narrowly drawn to serve a compelling state interest.  The defendant has largely sidestepped that issue with his focus on the wrong legal standard, but nonetheless it remains the only issue before the Court.

### III.    The plaintiffs have not misplead their case.

Finally, the defendant contends that it is "analytically and constitutionally inappropriate to challenge a portion of the [ballot access] scheme in isolation." Defendant's Brief, *supra,* at 6.  He suggests that the Court should deny the plaintiffs' claim because they did not challenge the State's ballot access scheme in its entirety.  *See id.*  This argument has no merit.

There is no heightened pleading standard for ballot-access cases. The plaintiffs' complaint puts the defendant on notice of their claim, and that is all that they are required to do. While a court can and should consider the plaintiffs' claim in context, see *Storer v. Brown,* 415 U.S. 724, 737 (1974), the plaintiffs need not challenge the entire ballot-access scheme as a matter of formal pleading. *See, e.g., Norman v. Reed,* 502 U.S. 279 (1992) (challenging specific provisions of Illinois' ballot-access scheme for new political parties); *Anderson v. Celebrezze,* 460 U.S 780, 782 (1974) (challenging only to the filing deadline for independent presidential candidates).

## CONCLUSION

The Court should grant the plaintiffs' motion for a preliminary injunction.

Respectfully Submitted,

**/s/ BRYAN SELLS**
Georgia State Bar No. 635562
American Civil Liberties Union
  Foundation, Inc.
2600 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA  30303
(404) 523-2721
(404) 653-0331 (fax)


**/s/ HOLLY DICKSON**
Arkansas State Bar No. 98137
ACLU of Arkansas
904 West Second Street
Little Rock, AR 72201
(501) 374-2842

ATTORNEYS FOR THE PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of August, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to:

Brian Brooks
Brian G. Brooks, Attorney at Law, PLLC
P.O. Box 605
Greenbrier, AR 72058

                                      **/s/ HOLLY DICKSON**
                                      Arkansas State Bar No. 98137
                                      ACLU of Arkansas
                                      904 West Second Street
                                      Little Rock, AR 72201
                                      (501) 374-2842